The next case on the call of the docket is Agenda No. 11-124649 Loretta Hess et al. v. The Estate of T.J. Klamm et al. and State Auto Insurance Company. Mr. Chemers. Madam Chief Justice, may it please the Court, Counsel, Robert Chemers from Chicago for the Defendant Appellant, Meridian Security Insurance Company, and I also refer to it as State Auto. The looming question here, as recently raised by the appellees, is whether there's been forfeiture or waiver. I'm certain one of your honors would probably ask that question. How preemptive. There has been no waiver and there's no forfeiture. The plaintiffs have misapplied the forfeiture doctrine. The position taken by Meridian throughout this litigation has been stint-fast and inconsistent. In the counterclaim, which was found with the record at 195 to 220, we assert that the only limit of liability applicable to this accident is that on the covered bottom appeal involving the accident. Even the appellate court in paragraph 11 of its opinion recognized that Meridian, referencing the counterclaim, asked the court to declare the policy as unambiguous and prohibit stacking of the limits without the injury, limiting the coverage to 100,000 per person, 300,000 per accident, which is the limit on the accident appeal. In our brief in the appellate court, brief of appellant, page 12 and 13 and 14, we made the same argument. The reply brief in the appellate court, page 2 and 4, we argued that the coverage attaches to the vehicle, not the person. In our petition for relief to appeal, which the plaintiffs chose to not oppose, we teed up the issue as a point for reversal and argued at pages 10 to 14 that there is an irreconcilable conflict for this court to resolve between the decisions of the first and second districts which said coverage attaches to the vehicle in the accident and the decision of the fifth district here and that court's earlier decision in Skidmore. There's no merit to the argument of waiver, even if there was any merit. It's a doctrine applicable to the parties, not to this court. And I don't think this court took the case to either chastise Meridian or its counsel that they waived a significant point. This is a case of significant general importance. There are millions of people in the state of Illinois, probably 13 or 14 million, no doubt millions of automobiles, and no doubt among those millions of automobiles, hundreds of thousands of insurers have more than one car in a policy. This is an important question. And this court will resolve, I assume, the difference between the approach to stacking with respect to first-party coverage, UM and UIM, uninsured motorists, underinsured motorists, and liability coverage. Bodily injury coverage attaches to the car involved in the accident. The first-party coverage, UM and UIM, attaches to the person. You don't even have to be in a car to bring a UM claim. You can be hit by another driver. There's a pedestrian who's uninsured. You can be a passenger in someone's car. The at-fault driver either has no insurance or insurance less than you do. The purpose of UM and UIM, according to this court, is to place the injured person in the same position he or she would be in had the at-fault driver carried adequate insurance. Under that scenario, it would be reasonable for an insurer to review his own policy. Why is the policy language for the UM and UIM coverage different from the body liability insurance coverage? On this particular policy, for whatever reason, state auto meridian security set off the UM-UIM limit saying it's applicable to all the vehicles. They didn't do that with respect to the UM. If you look at the first physical page of the declarations, it shows three automobiles and the limits stated once. At the bottom of that page, it says continue down the next page. And on the next page, it lists a fourth vehicle, but it lists the limits of liability a second time. We regard that declaration as a continuum. Although it's two physical pages, it's one declaration. And no legitimate argument can be made, and none has been made by the plaintiffs, that the coverage for the Kia, which is shown on the second physical page, somehow should apply to the coverage for the Chevrolet, which was involved in the accident. That difference in the layout of the policy should have no significance and no application. If that's the case, then why did they repeat it on the second page? I think that's the only place that is. With respect to the UM-UIM limit, it's shown on the second page. It's not shown on the first page. I don't have an answer to that, other than we're not dealing with UM and UIM, and the fact that it's laid out one way should not affect how this court regards bodily injury coverage. We're asking this court to find that bodily injury coverage does not stack as a matter of law. It doesn't stack because if the car has minimum financial responsibility limits, which is $25,000 per person, $50,000 per accident, public policy in Illinois has been satisfied. There is no legitimate reason to attach to the coverage for the vehicle in the accident coverage for a vehicle that's not in the accident. That is what the anti-stacking clause is designed to prevent. In the context of a liability claim, the conditions with respect to UM and UIM are not present. There is no reason, and none has been articulated by the plaintiffs, to review the at-fault driver's policy, if you can even get it. There's an issue in Illinois whether insurance policies are discoverable. I know the fact that limits are discoverable under section 143.24b of the insurance code. All you have to do is write a letter, ask what are the limits. If you don't get the policy, you'll get the limits. There is no reason for the injured party to believe that the limit of liability for a vehicle not involved in the accident could apply. We submit there is no possible ambiguity that any other vehicle's coverage listed on a declarations page could apply if that vehicle was not involved in the accident. We have a situation here where this court in Hobbs, 14 years ago in 2005, said, explicitly cautioned the courts not to apply a per se rule. That's solely because the limit is stated more than once on the declarations page, that there would be stacked. The appellate court here, we submit unmistakably applied a per se rule. It found that because the limit was stated twice, once on the page with the three vehicles, including the accident vehicle, the Chevy, and a second time on the continuum page, which they said the argument was not persuasive. Since it was listed twice, it stacks twice. That is a per se rule because the appellate court didn't point out any ambiguity. Interestingly, the plaintiffs say there are three reasonable interpretations in this case. One by the trial court, the second one by the appellate court, and the third one by Meridian. The plaintiffs don't say there's a fourth reasonable alternative, which would be their own, because they don't offer one. The trial court's view and the appellate court's view merely concluded that stacking occurs. They don't point out what the ambiguity is. The appellate court here, if it is really of the mind that there are two declarations pages, ignored its own decision from about five years earlier in Profitt v. One Deacon, where there were two declarations pages. And the court held there's no stacking. And it ignored the second district's decision in Strickland, where there were two cars, two declarations pages, and one policy. And no stacking, no ambiguity. The test is whether the two physical pages of the declarations create a reasonable alternative interpretation. And we submit that they do not. I mentioned to some insurance executives that I was going to argue a stacking case in the Supreme Court of Illinois. Their comment was it must be from the fifth district. Well, I used to think the only courts that stacked coverage in Illinois were south of Interstate 72. Grutter, 1993, and Hobbs, 2005, both came from the fifth district. This court is again addressing stacking now in 2019, and it's from the fifth district. We submit to this court that contrary to the appellate court's opinion, bodily injury limit of liability for the vehicle not involved in the accident should not stack or aggregate with the bodily injury limit of liability on the vehicle involved in the accident. I think we could speculate that if this policy and one declaration were three vehicles with the limit of liability listed for once, and among those three vehicles was a 2006 Chevy, it wouldn't be. There is no legitimate argument that there could be stacking. It is not within what the Grutter court said. It would not be hard to find an ambiguity if you have multiple vehicles listed on a declarations page with the limit of liability listed more than once. They said that would not be hard to find, and they found it. Yates v. Farmers. I lost that case 20 years ago in the fifth district. Beacon v. Goldman. I lost that case in the fifth district. The only stacking cases that come out of anywhere other than the fifth district, I lost in the third district. Bowers v. General Cashman. That's an outlier, because all the other cases permitting stacking are in the fifth district. Since it would be speculation that if there were only three cars on this policy and they were on one declarations page, there would be no stacking, adding a fourth vehicle on the second physical page should not double the liability coverage given the anti-stacking language that clearly states that the maximum limit of liability would not increase based on the number of vehicles, the number of planes, the number of machines, or the number of premiums paid. The Seventh Circuit sometimes says things that are significant. This court's not bound by it, but in Grinnell Select in 2004, Judge Easterbrook, writing for the court, wrote an opinion not allowing stacking, and he ruled that because we sit in a diversity of citizenship context, our role is to predict how the Supreme Court would decide the issue. His forecast in 2004 was that if the Supreme Court had the stacking issue, it would not follow Yates and it would not follow Hall. One year later, the Supreme Court had Cox. Yates was distinguished. Hall was overruled. Judge Easterbrook got it right. In his analysis, he said, the Fifth District is the only court in the United States which stacks coverage. At that time, he was correct. He wrote, assume the declarations page is ambiguous. Assume it's ambiguous. Still, how does this justify stacking unless the no stacking clause is read out of the policy? Its function is to say that even if some other clause suggests the possibility of stacking, that is not what the policy means. He called the anti-stacking clause, quite similar to that found in the Meridian policy, a disambiguator. 363 Fed 3rd at 1007. We're asking this court to disambiguate the decision of the Fifth District here. And when this court does, I can assure you that the underwriters around the state of Illinois, bear in mind Illinois is the home of State Farm, Allstate, and Country Farm. They're the largest companies in the United States. They will respond. Insurance companies always respond to what this court says with respect to insurance coverage. Judge Easterbrook again wrote, to see the ambiguity in the policy is to learn why the anti-stacking clause was included. It's not remotely to justify the overruling of the anti-stacking clause. Here, the plaintiffs could not reasonably conclude that the limit of liability of any vehicle other than the 2006 Chevy, which was involved in the accident, could possibly provide coverage. There is no reasonable interpretation that the limit of liability associated with the Kia, the car shown on the second physical page of the declaration, could apply as the Kia was not involved in the accident. It's interesting, the plaintiffs have nowhere said that Meridian's interpretation is not reasonable. In fact, page 19 and 20 of their brief in this court, they say one of the three reasonable interpretations is Meridian's interpretation. They also said the trial courts and the appellate courts think, if the trial court, the appellate court, and Meridian look at the same language and the same policy and come up with three different results, it has to be ambiguous. That's a classic error. The trial court merely said everything is stacked. The limit went from 100 per person, 300,000 per accident, to 400,000 per person, 1.2 million per accident.  They said the stacking, because the limit appeared twice, it would be 200,000 per person, 600,000 per accident. As I pointed out in the appellate court and I pointed out in our brief here, Meridian has paid $100,000, which is the limit per person to each plaintiff in this case, because in the Fifth District, it's considered bad faith to cause any litigant to litigate the undisputed amount of coverage. We don't dispute $300,000. We pay it. We are disputing the stacking that was created by the Second District here. When this court looks at the cases involving coverage attaching to a vehicle, it would look at qualifier from the Second District, which held that the coverage for the vehicle in the accident is the coverage that applies. The First District said the same thing. The Fifth District is the only court saying something to the contrary. Interestingly enough, in the decision here, the Fifth District didn't even cite its decision in Skidmore. Skidmore permitted stacking of DI limits. It's the only case before this one to have allowed that. Skidmore... Where in the policy, though, does it limit the coverage? As I read, the policy says, we will pay damages for bodily injury or property damage for which any insured becomes legally responsible for an auto accident. That is the insuring agreement. And in the limit of liability clause, the language is, the limit of liability shown in the declarations for each person for bodily injury liability is our maximum limit of liability for all damages sustained by one person in one auto accident. It talks about the auto accident involving a named insurer. That's in the insuring agreement, correct. Then there's the limit of liability clause, and the policy, of course, has to do that as a whole. You can't take one part out from the other. Interestingly enough, one could argue that in Brugger and in Hobbs, when this court looked at the limit of liability clause, it first looked at the limit of liability clause, and it says, the most leveraged pay is the limit of liability stated on the declaration. Their problem was, once in the declarations, if the limit of liability was stated more than once, which one do you pay? It attaches to different vehicles. That may be correct with respect to UM and UIN. With respect to bodily injury, where our motor vehicle code says, the coverage attaches to the vehicle and not to the person. As long as there is coverage for the vehicle involved in the accident, that should be the maximum that would be paid. Your Honor, since the limit of liability clause is part of the policy, this court in Hobbs, in a footnote held, it was an important part of the policy. When the policy is read as a whole, we have the insuring agreement, which sets forth the insurer's promise to which insurer that it will defend it and it will indemnify it, subject to the terms and conditions and limitations and exclusions of the policy. Then you read the limit of liability clause, and it tells you what the maximum will be paid for a person's bodily injury, and for all persons with respect to bodily injury in the same accident. Notwithstanding, or as the language is stated, regardless of the number of insurers, claims made, vehicles or premiums shown, or vehicles involved in the accident. With respect to bodily injury coverage, however, there is only one important limit, and that is the limit for the vehicle involved in the accident. Mr. Chambers, are you asking this court to hold that bodily injury limits may never be stacked, or are you asking that to specifically state that this policy language is not susceptible to more than one reasonable interpretation? I could answer that by saying all three, Your Honor, and we're asking for the court to find, as a matter of law, and policy construction, and dovetailing the policy with the motor vehicle quote, that the limit of liability for the vehicle involved in the accident is the applicable limit, and no other car on the policy has its limit applied. So, as a matter of law, B.I. is not stacked. Alternatively, we're asking the court to find that the declarations page here is not ambiguous. Therefore, it was fair to stack the limits twice, once involving the coverage for the vehicle in the accident, and the other time that the TIA, which is on page two of the declaration. And we're asking the court to find that a two-page declaration where on the bottom of the first page it says, continued on the next page, doesn't create a separate policy. It's a continuum, especially in the light of the Fifth District's own decision in profit, which involved two declarations pages and a holding from that part that there was no ambiguity, and stripling from the Second District that involved two cars, two deck pages, and one policy. So the ambiguity argument is really an alternative basis that we don't reach if we find that there is no stack. If you hire B.I. and not be stacked as a matter of law, you don't have to reach the ambiguity argument. If you do think about the ambiguity, the language in this particular policy is in contrast to other policies that expressly state when the policy ensures two or more cars, the coverages apply separately to each car. And I think that's probably why, Your Honor, the Fifth District here in the footnotes said, we're not going to look at other cases because the limitation of liability clause, or the anti-stacking clause, are different in a lot of cases. They had in their footnote, they had Barlow v. State Farm. That was a case that was decided, I think, four weeks before we argued this case in Mount Vernon, where they stacked 16 cars on one policy. It was the first time in Illinois a fleet policy was stacked because the limit of liability was stated for each of the 16 vehicles. So $250,000 in U.N. coverage became $4 million in U.N. coverage. Policies are all different, and I think the Fifth District also pointed out that you could have two cars on one policy, both involved in an accident, and they had their own case cited, Progressive, which was a motorcycle and an ATV family. They hit each other, and one family member was seriously injured. For all of these reasons, I'm going to save time for my rebuttal. We would ask this court to reverse the appellate court to the extent that it, we agree with it on all its points, except where it stacked the limit twice. We'd ask the court to reverse it. Thank you. Thank you, Mr. Chambers. Mr. Schaffer. Thank you, Your Honor. It was important. My name is Jay Schaffer. I represent three estates. I can say Mr. Kapowski deceased. His two granddaughters, I know, survived. Sorry. Meadow, who survived, and Sierra, who did not. I think the most important thing about this case is that it is different than all the other cases. The most important thing here is that as I read this policy and I read the case law, we aren't stacking multiple policies. We aren't trying to stack multiple vehicles because there was never going to be somewhere else. We are construing a contract. Insurance law, longstanding in Illinois, says you construe insurance policies as contracts. This is a contract. You look at the four corners of the contract and see what it says. Contrary to counsel's argument, this is not a liability policy. They can be treated separately than all the UIN policies throughout the state because they don't exist. Neither of those things exist. What you have is an automobile insurance policy. In the state of Illinois, we sell automobile insurance policies. When you take that automobile insurance policy and construe it as a contract, so you get to construe paragraph three of the contract differently than you can construe paragraph five of the contract. When you enter into a contract and sell widgets, you want to treat paragraph three of the contract differently than paragraph five. No. You look at the contract and construe what the contract says. So what we're doing here is we're asking, what does the contract say? This is a buy-sell agreement. Something was sold. It was paid for. What did they receive? Well, you look at the policy and see what they received. What does it say? They received an insurance policy that says the most we will pay is the amount stated on the declarations page. You then turn to the declarations page, and there are a few things in this policy that are different than any other policies that I've run across. One important thing is, unlike some of the other cases, it doesn't say an insurance is provided. It says the coverage is provided where a premium is shown for the coverage. So we don't have to decide whether or not to apply, because it says there are expenses. We have coverage everywhere a premium is shown. So you ask yourself, how much coverage? And what's it for? Well, it says the amount of coverage shown in the declaration. Now, as you go down, you come to line A, liability, $100,000 per auto. No, that's not what it says. Contrary to all the arguments, it doesn't say anywhere in this policy, or you would have been shown it in the briefs, the PLA, whereas the amount of coverage that is shown in the deck page is per auto. It doesn't say that because that's not what the policy says. The policy says that there's $100,000 in liability coverage per person, and it says that twice. Now, you can look at the continue on the next page that is down there at the bottom and say, well, all right, so this deck page continues. But you know what it doesn't show? It doesn't restate the other autos. It doesn't restate a multitude of the other things. It doesn't restate the UIM coverage. Menus, books, everything under the sun are continued on the next page. They don't restate what's shown on the first page every time you turn the page to the second page. So you ask yourself, what did I get? Well, when you look at this policy, you've got $100,000 liability per person or liability by entry on the first page, and coverage where? Everywhere a premium is shown. It says so right on the deck page. Coverage everywhere a premium is shown. Where a premium is shown? Four places. That's why at trial Judge Dernbeck reached the very same question Your Honor asked earlier. If they intended there to only be one limit of liability, why didn't they just say so? They wrote it, right? Why didn't they just say so? What they said was, no, you have coverage everywhere a premium is shown. How much coverage? Whatever it says on the deck page. Then it says the cost. Now, what Judge Dernbeck concluded, and where I think the appellate court, while they found the ambiguity, they realized there was a problem. They didn't apply the law. What is the law? Once you've identified the ambiguity, which is what? Reasonable interpretation. Nobody says that all these other ideas aren't reasonable. The question is, is there more than one? Once the appellate court determined that there was an ambiguity, another reasonable conclusion, then what are they supposed to do? Construe the best coverage for the insured. In this case, the best coverage for the insured is exactly what it says. Coverage where a premium is shown. How many places are premiums shown? Four. How much coverage? $100,000 per person. That's why the trial court concluded that there was $400,000, 1.2, and the appellate court, once they found the ambiguity, they only stacked it. If you want to use the word stacked or aggregated, you can use the word aggregated, but I'm not sure which way the jurisprudence says we did. But they only aggregated the policy once for each time the declaration was shown because they felt that was the ambiguity. The secret is that when the ambiguity is identified and there are more reasonable interpretations, then we construe the federal coverage. What's your argument, counsel, if this court follows the jurisdictions that does not allow stacking in a bodily injury situation? Well, I guess it would depend on why, Your Honor. We have some. The states don't. I created a transparent code in the Charter that shows all 50 states do. And the ones that say we don't allow stacking are because they're legislative. If it says it is, then maybe you don't stack it. Because what I found when I was reading all these cases from other states, the seven certain elements, what they all say is it's contract. You look at the contract and see what the contract says. Now the legislature can act. What does the legislature not do in Illinois? Act it. Ruger's been on the books 25 years, Hobbs years, stacking all over the place. They pass an insurance code, what? An allowance for the insurance period to put language in the policy that says you can write in there anti-stacking money. Did they pass a law that says you can't stack? No. And what does the law in Illinois say? If the legislature hasn't acted, then we are entitled to assume they were broke. Since you don't have another chance to get up here, Mr. Chalmers is going to get up here and say the legislature enacted the statutory scheme to demonstrate that liability insurance attaches to the motor vehicle. You heard that earlier. Yes, sir. While underinsured and uninsured motors attaches to the individual. So he would say, in a sense, I guess, that this legislature has already indicated that there's a statutory scheme that would say stacking would not be allowed. Except it doesn't say stacking is not allowed. What it says is attaches to the vehicle. Attaches to the vehicle. There's one vehicle involved in the accident, right? Okay. Except that it doesn't say you get to disregard the contract. And they could have written this policy any number of ways. They could have used the language that attaches to the vehicle. They could have used the language in other insurance, like many other policies do. If the court looks in C-118, 126, and 142 of the record, there's sections that many other cases have relied on, down stacking, is what it says. Other insurance, if other insurance is available, that clears up ambiguity. They put the other insurance language to clear up ambiguity in a lot of policies, in a lot of places. But when you get the liability covered today, all it says is we'll pay our program shipping. It doesn't say that we're throwing out any insurance anywhere else. If this state had a specific anti-stacking statute, are you saying that that could be bargained away via contract? It would depend on what the statute says. Believe it or not, there are several states out there that say that exact thing, that you can't stack unless the policy allows it. So you could, I mean, if I'm in the legislature, I guess I can pass a law that says whatever I want to, which they've proven with all due respect. Not going to get an argument there. The other point that we need to touch on is that this Court has said point blank, this is not a first statement. I was surprised a little bit, you know, as he pointed out, I didn't contest the PLA because I thought the Appellate Court was wrong. My clients didn't want this behind them. They didn't want me to appeal. They want to close this chapter in their life. But if the other side does and tries to put it and stack it back four ways like the Appellate Court did, I said, okay, I'm good with that. What happened, though, is that neither the Appellate Court nor the Appellate Court applied per se rule. They say right in their decision that they acknowledge the holding of that for the most part of the case, for the most part of the case, in this decision. Then they go on to do the exact right thing. They analyze the entire policy. And what you cannot do, I challenge anybody to do, is look at this declaration page. Look at the policy that says how much coverage there is. Look at that page. It shows the limits of liability twice. And more importantly, not insurance, but coverage where the premium is shown, four cars, four loads. Well, how much coverage am I supposed to have? You flip the page to the section on uninsured voters, and it gives you one limit, one time, on all three deck pages. It gives you one payment, one time, for all four cars. And it says total limit for all vehicles covered under this policy. Right in the middle of page two of the three-page declaration. Clear as crystal. No confusion. You cannot reconcile that crystal clear statement of coverage, or UMUI coverage, with four premiums that provide coverage wherever premium is shown, multiple statements of coverage, and a statement that there's $100,000 in coverage wherever the premium is shown. That is so convoluted when compared to the UMUIM statement, which is exactly what Judge Moore wrote. You can't find all these ambiguities and then compare that with all the rest of this policy. Now we want to penalize the public court for constraining the entire policy, which is what they want to do. If you read the briefs, though, the appellate meridian wants you to say, this sentence is crystal clear, this sentence, the second sentence is crystal clear, and the third sentence is crystal clear. What they don't want you to do is re-evaluate the judgment, which is exactly what you're supposed to do. If you read the whole policy, all four points of the contract, all those other cases, Copiaire, West, Great America, they're trying to stack multiple policies. Well, they all have other instruments. We're not trying to stack multiple policies. We're not trying to aggregate coverages across policies. Just constraining the contract. This is an important topic, but the reality is the doctrine is very decisive in most cases. This court has ruled over and over, insurance policy contracts, this court has ruled over and over, you construe them in favor of coverage. If you find ambiguity, you construe it in favor of the insurer. And does it say anywhere in here that the coverage is for the vehicle? It does not. And so there may be, as counsel said, hundreds or thousands or however many policies floating around out there for all the different insurance companies, but not like this. There may be some more out there like this, but I have never seen one where this policy touches on everything that's wrong that you see in 20 cases. Some of them say insurance, some of them say coverage. Some cases have more than one debt payer. Some cases have more than one limited liability. There aren't any cases where it says all of them in the same policy. And that's the difference between this policy and all the other cases and all the other policies that are out there floating around. And that's what makes this case different than every other case and required both the trial court. The trial court asked in the record, page 36, if they only intended a single limit, just like they did for insurance or motors, why didn't they say so? Why did they put multiple limits? Why did they say coverage wherever it may be shown and have multiple limits when they refer you to the debt payer to determine? Just like we didn't have the answer here today, we didn't have the answer then. How do you show what's covered if you don't say premiums per automobile? Well, you know what? Somebody brought that up before, and I have found that they don't list CARs on insurance policies and provide coverage that they don't collect premiums for. I think that I can find a way to say these are the CARs that we're insuring and this is how much premium it is. There are a lot of other policies out there where it says these are the four CARs and the premium is $1,376. It's not itemized per CAR? It's not on page 2. They already found a way to do it once. They don't itemize it per CAR on page 2. It could be. I mean, we can sit down and probably come up with a half a dozen ways. The reality is we're stuck with what they did. It's a very specific policy. The test isn't whether or not Meridian's interpretation is reasonable. Nobody said that they're crazy, but that argument doesn't make sense. I understand that argument. It's reasonable. It makes perfect sense. The question is, are there other reasonable interpretations? That's what triggers the ambiguity. The problem that I think we ran into here is that once they ran into the ambiguity and they identified it, the 5th District then didn't construe in favor of coverage and complete the analysis of the decommissioned to determine the third four CARs. That's why we asked that in our cross-appeal that it be put back the way coming out of Franklin County to start with. There was an argument made that there's no way for the injured person to have known how much coverage was available. There never is. It's irrelevant what the victim thinks the policy is. The only thing that matters is what the policy actually is. The victim doesn't have any say-so on day one. They get hurt. Their rights in time are fixed on the day they're lost. When they're right in time under the policy that applies to that loss, that is a bright line in the sand.  I think this court first said that in France v. Citizens, 400 IL 55, when an accident occurs and the party is injured, their rights under the policy that provides coverage for the accident is fixed at that point in time. They don't have to know how much coverage is available. It doesn't matter what they think or what they know. The only thing that matters is what they're actually doing. It is in every one of those people, even though they don't know how much coverage there is, it is in their best interest that they have that vested right because if the insurance carrier and the insurer, I mean if the insurer and the insured get colluded, they can say, well, we all agree there's no coverage. Or the insurance company can say, you know, there's an exclusion that applies, but sorry, I'm going to have to keep the premiums down. I don't want to make coverage. What the insurer and the insured agree to makes no difference. It's only what the policy actually says on the day they're lost. I don't think that we have to stretch to conclude that this policy provided $200,000 in coverage as the public court found it. It says so right on its face. The question is, what do you do once you've identified that other reasonable alternative? Once you've identified that reasonable alternative and you construe the policy in favor of the insurer, that's when you have to go back and say, all right, if there's coverage everywhere and premiums are paid, that's why there's $400,000 in coverage and not $200,000, certainly not $100,000. You know, briefly, we have to distinguish it from Breeder and Hobbs. They had one declaration. We have a three-page declaration with two statement limits. And the reason that this is reasonable is because Justice Freeman and Justice Fitzgerald, as they both said, it would not be difficult, and Justice Fitzgerald and Hobbs said the policy could easily be interpreted. I've been advocating because the limits are stated more than once on the regulations and the policy corrects you to the declaration to determine coverage. Twenty judges so far have concluded under this fact pattern that it would be reasonable. And I believe that, by this position, it's going to be reasonable. They would like to argue, and they do, that the most you can recover is the amount for the car carrier and the accident. That's not what it says. I would ask the court to reinstate the trial court's decision. Thank you. The argument you just heard, this first half, is a statement about the language on the declarations page. Coverage is provided only where opinion is shown to be covered. It's based on an individual rule of the state, called Mr. General Kennedy. I would refer the court to his decision in Hobbs, at 214-017-11, at 23. The statement on the declarations page, that, quote, coverage is provided only where opinion is shown, to be covered, does not, under any reasonable reading, contradict the anti-staffing clause. This statement simply informs the policy under which coverages are equivalent to each law. Then it goes on to say, at most, the statement that coverage is provided only where opinion is shown. These open the question of staffing. This does not mean that the policy is ambiguous. The entire argument was rejected. This court, in Hobbs, rejected that argument, and, as a result, overruled Hobbs, I'm sorry, overruled all, which Judge Easterbrook, the year before, said this court would not follow. It overruled Hobbs. The essence of the argument is that that language is somehow confusing and should permit or allow staffing. This court, in Hobbs, specifically rejected that very argument. When the motor vehicle code and the language that the insurance is on each registered vehicle, you insure a car, you don't insure a person. The person who owns the car is insured for the operation of that car, and any person operating the car with permission is insured as well. One would expect that if the minimum financial responsibility has been satisfied, then public policy has been satisfied. That is, the vehicle is insured. Having multiple cars on a policy is certainly a convenience to a policyholder. Four cars on one policy, I think, is better managed by people than four cars on four policies, even if under the same insurance company. And again, the language of the policy must be read as a whole, which I think this court appropriately did in Hobbs, where it pointed out that the language upon which the claims rely, which was found on the policy in Hobbs and is found on the policy here, does not in any way go to whether limits staff. Plus, those cases involve U.N. and U.I. This case involves the U.I., which, as Justice Thomas pointed out, at least in asking me a question, indicates it's different. It attaches to the car, not to the person who is in the first place. I think to ask this court to stack limits four times because there are four cars on the policy is a nonstarter. Even the appellate court in the Fifth District said no to that. We think that stacking it twice because of the physical layout of the declarations without anyone saying, well, what's the ambiguity? How is that confusing to the reader where the limit of liability clause says that most will pay is the amount stated for bodily injury on the declarations. That would be in connection with the accident here, Now, the language, the accident vehicle, is not found in the policy, except the policy is designed to provide coverage for the ownership, maintenance, or use of an auto in an accident. That's what auto insurance does, and that's how this policy was founded, and this carrier paid, we believe, all it owes for this tragic accident. That being said, once again, unless there are questions, I've asked the court to approve the appellate court to extend it to the appellate court, but revert it to the extended case. Thank you. Thank you. Case number 124649, Loretta Hess et al. v. David P. J. Tan, a state auto insurance company. Case, this would be agenda number 11, and it will be taken under advisement, and thank you, counsels, Mr. Chemers, and also Mr. Schaffer for your arguments this morning.